# MEMORANDA

Matter of the Application of LUCILLE G. SHELDON for the Payment of the Award for Parcel Damage No. 1 Howard Place, on the Damage Map and in the Report of the Commissioners of Estimate and Assessment.*

(Supreme Court, Kings Special Term, March, 1912.)

*Tax sale — Statute of Limitations — Laws of 1883, chap. 114, as amended in 1885 — by the lapse of twenty years after the purchaser becomes entitled to his deed under a tax sale his rights are barred — award in condemnation proceedings to unknown owners confirmed after delivery and recording of tax deed — application under Greater New York Charter, § 1001, as amended in 1906, to determine respective interests in award — tax deed given after lien of taxes under Laws of 1883, chap. 114, as amended in 1885, had lapsed, though not void, will be set aside at instance of owner of fee — restoration to position where owner may redeem by compliance with statute and reimbursing purchaser at tax sale for sums paid for redeeming property from other tax sales, with interest.*

APPLICATION under section 1001 of the Greater New York Charter (Laws of 1901, chap. 466, as amended by Laws of 1906, chap. 658), for an order determining title to an award made to unknown owners by commissioners of estimate.

Hugh A. McTernan (James R. Boham, of counsel), for petitioner.

M. E. Finnigan (Louis A. Brown, of counsel), for Joseph S. Iverson.

Archibald R. Watson, corporation counsel.

* Reported by request.— [REPR.

STAPLETON, J. This is an application under section 1001 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws of 1906, chap. 658) for an order determining the title, or the respective estates and interests of the parties to the application, to an award of $2,099.28, made to unknown owners by the commissioners of estimate in proceedings to open Howard place in the borough of Brooklyn and city of New York.

The city was made a party to and participated in the proceeding.

It is clear that the contestants for the award are narrowed to the applicant, Lucille G. Sheldon, and Joseph S. Iverson.

By an order entered on the 3d day of March, 1911, a referee was appointed to take the proof and testimony of the claimant or claimants or parties interested in the lands for which the award had been made.

The referee discharged that duty and has rendered his report of the proof and the testimony, wherein he undertakes to make findings of fact and conclusions of law; his ultimate determination being to the effect that Joseph S. Iverson is the owner in fee simple of the premises described in the condemnation proceedings as damage parcel No. 1 Howard place, and is entitled to the award made to an unknown owner for that parcel.

A reading of the statute under which the referee was appointed makes it certain that his authority was confined to taking proof and that the duty of determining the effect of the proof is imposed upon the court.

The contention between the parties is one of law, as the facts are conclusively established if not practically undisputed.

The premises of which the damage parcel formed a part were in the ownership of the grantors of Lucille G. Sheldon. Her immediate grantor was Amanda L. Gilbert, who conveyed to her on January 25, 1910;

Amanda L. Gilbert having acquired title on July 25, 1907, from Ruloff Bennett and wife, Bernardus Bennett and wife, Johanna Remsem and Cornelia Kouwenhoven,the persons named being the only children, heirs at law and devisees under the will of Cornelius Bennett the second, deceased.

On the 19th day of May, 1886, the premises were sold for unpaid taxes under chapter 114, Laws of 1883, as amended by chapter 163, Laws of 1885, by the registrar of arrears in the former city of Brooklyn, to Adolph Sussman, and thereafter, on the 21st day of March, 1889, the said Adolph Sussman assigned his certificate of sale to William A. Andrews, and on the 5th day of March, 1908, William A. Andrews assigned the said certificate to the said Joseph S. Iverson.

On the 6th day of March, 1909, Cornelia Bennett, Johanna Remsem, Ruloff C. Bennett, and Bernardus Bennett, heirs of Cornelius Bennett (they being the only persons of record in the county of Kings as being the owners of the premises) were served with notices dated January 21, 1909, which notices stated: In pursuance of chapter 114, Laws of 1883, as amended, the registrar of arrears of the city of Brooklyn (now deputy collector of assessments and arrears) on the 19th day of May, 1886, sold at public auction, for nonpayment of certain taxes and assessments, all that certain lot, piece or parcel of land in the city of Brooklyn, now borough of Brooklyn, known and designated on the assessment map of the Twenty-second ward, in said city, as lot 85, block 204; that Joseph S. Iverson became the purchaser of the same at said sale, by assignment, for the sum of thirteen dollars and seventy-four cents; that Iverson held the certificate of sale thereto, which certificate is known as No. 4818 on the register of sales designated as liber 83 in the office of the registrar of arrears (now office of deputy collector of assessments and arrears); that if said amount of thirteen dollars and seventy-four

cents, together with the accrued interest and all taxes and assessments, etc., which have been paid, and the charges, be not paid on or before the expiration of one year from the date of the service of this notice, Iverson will apply to the proper officers of the borough of Brooklyn for a title absolute in said lands as provided for in said act.

On the 7th day of March, 1910, said Joseph S. Iverson applied to the comptroller of the city of New York for a deed of the premises. The deed was delivered to him on the 4th day of April, 1910, and recorded in the office of the register of the county of Kings on the 7th day of April, 1910.

The award in the condemnation proceeding was confirmed by the order of the Supreme Court on September 30, 1910.

It will be perceived that the period between the time of the sale and the delivery of the deed was over twenty-three years, and that the period between the time of the sale and the time of the service of the notice in March, 1909, was over twenty-two years.

The proposition advanced by the applicant Sheldon is that the lien of a tax or assessment is lost by the lapse of twenty years, that the rights under a sale for an unpaid tax or assessment are barred by the lapse of the same period of time, and that the deed given to Iverson by the comptroller is inefficient to deprive her of her estate in the lands of which the damage parcel formed a part.

The act under which the taxes involved were imposed, and the sale for unpaid taxes provided, and the lien of both established, is chapter 114, Laws of 1883, as amended by chapter 163, Laws of 1885.

By section 3 of the act, the registrar, after giving notice as pescribed in the act, was authorized to sell any parcel of land upon which a tax was imposed under the act, at public auction, to the highest bidder,

for a sum not less than the amount unpaid and all interest accrued thereon.

By section 4 he was empowered, upon the receipt of the purchase money on such a sale, to deliver to the purchaser a certificate of sale; and upon presentation of that certificate and proof of service of notice, made as prescribed under the act, upon the person or persons having an estate in, or any mortgagee of the lands sold, whose estate or lien appears of record in the county of Kings, after the expiration of one year from the date of such service, to execute and deliver to the purchaser at such sale, or his legal representatives or assigns, a deed for said lands and premises.

The section provides that such purchaser, his legal representatives or assigns, shall take good and sufficient title in fee simple absolute of the property sold, of which said deed shall be presumptive evidence in any proceeding or action by such purchaser, his heirs, legal representatives or assigns, taken, prosecuted or defended for the recovery of the possession of the property sold, or in the establishment or defense of his or their title, shown by said deed.

The act does not prescribe the period of the lien. It does not prescribe, with relation to the delivery of the deed, the time within which the notice to persons having an estate in or mortgage upon the lands sold, whose estate or lien appears of record in the county of Kings, must be served.

There is a provision whereby the person or persons having an estate in, or a mortgagee of the lands and premises so sold, whose estate or lien appears of record, are given the right to redeem before the expiration of one year after the notice of sale hereinbefore referred to shall have been given, or before a deed of the premises shall have been delivered, by paying to the registrar of arrears, for the use of the purchaser or his assigns, the sum paid by him on the sale and ten per centum on the same, with interest on

47

the aggregate amount at the rate of fifteen per centum per annum from the date of the sale, and one dollar for each notice served, together with all sums which shall have been paid by such purchaser or his assigns for taxes, assessments, or water rates on the lands, levied, imposed or payable after the 1st day of July, 1882, made paramount by the act to the liens constituted by the act, with interest thereon, from the date of such payments respectively, at the rate of nine per centum per annum.

In *City of New York* v. *Colgate*, 12 N. Y. 140, which was an action commenced in 1851 to enforce the lien of an assessment laid by the confirmation of a report of commissioners of assessment in a street widening proceeding, an answer was interposed pleading the six years' Statute of Limitations. One of the judges writing (Gardiner, Ch. J.), was of the opinion that the order of confirmation was in the nature of a judgment and that the rule applicable to an action on a judgment applied, while another judge, writing (Denio, J.), contemplating the statute for the enforcement of the collection of the assessment, was of the opinion that the assessment is to be considered as in effect a mortgage, as well in regard to the time of commencing an action upon it as in other respects. The decision of the court was that the period of limitation applicable was twenty years.

In *Fisher* v. *City of New York*, 67 N. Y. 73, which was an action brought to recover a balance alleged to be due upon an award made in 1860 for lands of the plaintiff, taken for the widening of Worth street, the answer set up the Statute of Limitations and also set up an unpaid assessment upon the premises, to the amount of the balance of the award imposed upon the same lands, for widening Centre street. The plaintiffs replied, denying, among other things, that such assessment remained due and unpaid, and alleging that the then owner of the premises paid the same but that it

was illegally assessed, and after its illegality was discovered defendant returned and refunded the money so paid. The assessment was levied and the lien thereof attached in 1837, twenty-five years before the award of 1862 and more than thirty years before the commencement of the action. The court held that the reply was proper to enable the plaintiff to avail himself of the statute presumption to defeat the claim of the defendant founded on the assessment, and said, referring to *City of New York* v. *Colgate, supra:* " There was no question but that the action was subject to some limitation and the court concurred in the result which was reached in both opinions that the limitation was twenty years. This must be regarded as a decisive adjudication of this question."

In *Jenkins* v. *Fahey,* 73 N. Y. 355, which was an action brought to compel a specific performance of a contract, between the plaintiff as vendor and the defendant as vendee, for the sale of certain real estate, the real estate involved was sold in 1838 for an unpaid assessment for street improvement. The purchaser never entered into possession, or exercised, or claimed to exercise, any acts of ownership. The court, at pages 364 and 365, recognizes that the sale, had more than twenty years before, did not constitute an objection to the title.

In *White* v. *City of Brooklyn,* 122 N. Y. 53, the court said: " The Statute of Limitations has relation to the remedy only, and while it might be available to defeat the remedy, it would not affect or curtail the lien of a valid sale. (*Waltermire* v. *Westover,* 14 N. Y. 16.) That is supposed to continue twenty years. (*Fisher* v. *The Mayor,* 67 N. Y. 73.)"

In *Curnen* v. *City of New York,* 79 N. Y. 511, 516, the court said: " The assessment-roll is akin to a judgment."

In *Orr* v. *Remsem* (Special Term of this court;

opinion filed August 10, 1885, in the Kings county clerk's office) which was an application to compel a purchaser at a partition sale to take title, the sale of the property for unpaid taxes being among the grounds asserted for the refusal, the court ('Cullen, J.) said: "These outstanding tax titles are therefore valid objections unless they are plainly barred by the statute of limitations. The lien of a tax or assessment is lost by the lapse of twenty years. (*Fisher* v. *The Mayor*, 67 N. Y. 73.) That the rights under a sale for an unpaid assessment are barred by the lapse of twenty years is recognized by the Court of Appeals in *Jenkins* v. *Fahey*, 73 N. Y., opinion at pages 364, 365. The sale stands in a different position from a tax. The purchaser at a tax sale under our city charter is not entitled to a deed or lease until after the lapse of two years and the statute does not begin to run until that time. Hence the purchaser has twenty-two years from the date of the sale. I think after the lapse of that period his rights are barred. I assume from the statement of the purchaser's objection that the purchaser labored under no disability which suspended the operation of the statute and that no leases were taken out or possession taken thereunder. Assuming this, I think that tax or assessment sales more than twenty-two years do not constitute good objections to the title."

The case just cited is, as to this court, decisive of the proposition that by the lapse of twenty years after the purchaser becomes entitled to his deed under a tax sale, his rights are barred.

The question remaining to be determined is, when the deed has been delivered by the authorized public official after the expiration of that time, whether that deed can be set aside in a proceeding of this character, where there are no pleadings and in contemplation of the rule that limitation is a matter of defense.

In the correct solution of that question it is desirable to understand the scope and purpose of a proceeding or motion of the character adopted here.

In *Matter of New York City* (*Public Park*), 136 App. Div. 654, 655, the court held: "The very purpose of a reference in these proceedings is to determine finally the ownership of an award, and for that purpose to have before the court or the referee every one who claims to be interested in the award. This avoids multiplicity of proceedings and secures complete adjustment of the rights of the litigants."

As no pleadings are prescribed, it could not have been contemplated that rules of technical pleading should be observed; and it is quite as appropriate to consider the question of limitation in a proceeding of this nature as in an application to compel a purchaser upon a judicial sale to take title, and, as has been seen, this was done in *Orr* v. *Remsem, supra*.

As the power is conferred upon the Supreme Court, with general jurisdiction in law and in equity, I assume that all equitable powers may be exercised to further the purposes of the act, necessarily including the power to set aside a deed standing in the way of a complete adjustment of the rights of the parties.

The comptroller is the successor of the registrar, and being vested with his powers under chapter 114, Laws of 1883, as amended by chapter 163, Laws of 1885, gave his deed after the lien of the taxes and assessments lapsed, according to the authorities. The power so to do had expired by limitation of time.

The deed thus given, while not void, is, I think, voidable, upon the facts here presented, at the instance of the owner of the fee, and should be set aside.

The claimant seeks the aid of equity to obtain the award.

Equity requires that the equities of the parties should be preserved.

The purchaser upon the tax sale should not suffer as the result of the inactivity of the owners in asserting their rights and pursuing their remedies during the period intervening between the issuance of the certificate of sale and the delivery of the deed by the comptroller. It would be quite as inequitable to permit the owner to have the advantage of Iverson's payments by standing by with an unrecorded deed, as it would be to permit him to have her property despite his laches in perfecting his title.

I am of the opinion that justice can be accomplished by restoring the owner of the fee to the position where she may redeem by complying with section 5 of chapter 114, Laws of 1883, as amended by chapter 163, Laws of 1885, and reimbursing the purchaser on the tax sale for any additional sums of money paid out by him in redeeming the property from other tax sales, with legal interest. See *Giles* v. *Austin*, 62 N. Y. 486, 493.

An order may be entered directing the payment of the award in such sums as may be properly payable to the parties in accordance with these views.

If the parties cannot agree upon the amounts, it may be referred to the referee to take proof so that the court may determine what such amounts should be.

Ordered accordingly.